793 So.2d 828 (1998)
Thomas R. TOWNSEND III
v.
CITY OF MOBILE.
CR-97-1394.
Court of Criminal Appeals of Alabama.
October 2, 1998.
Opinion on Return to Remand May 28, 1999.
Rehearing Denied December 3, 1999.
*829 Gregory S. Combs, Mobile, for appellant.
Wanda J. Cochran, asst. city atty., Mobile, for appellee.
McMILLAN, Judge.
The appellant, Thomas R. Townsend III, was found guilty by the City of Mobile Municipal Court of failing to purchase a business license. He was fined $200 plus court costs and was sentenced to 30 days in jail. That sentence was suspended and he was placed on one year's probation. After appealing his case to circuit court, the appellant was found guilty and was fined $200 plus court costs. The appellant asserts that City of Mobile Ordinance No. 34-082, under which he was prosecuted, discriminates against interstate commerce in violation of the Commerce Clause of the United States Constitution. U.S. Const., Art. I, § 8.

I.
The City of Mobile asserts that this Court is without jurisdiction to decide the appellant's Commerce Clause claim because the appellant failed to notify the attorney general that he was challenging the constitutionality of a city ordinance, and it cites § 6-6-227, Ala.Code 1975, in support of its assertion. However, § 6-6-227 is a provision included in the civil practice section of the Code and is inapplicable in a criminal proceeding. Because the appellant properly presented his constitutional argument to the circuit court, the issue is properly before this Court.

II.
The appellant asserts that his conviction is due to be reversed because, he says, the City of Mobile failed to have *830 admitted into evidence a correct copy of the complete ordinance under which it prosecuted him. The City of Mobile concedes that it did not admit into evidence the full ordinance, and that it inadvertently left out portions of the ordinance reciting the levy and providing for penalties. However, contrary to the appellant's assertion, the City of Mobile admitted enough of the ordinance to define the crime of which the appellant is accused and to set out the penalties. Attached to "City's Exhibit # 4" were portions of the ordinance defining key terms, such as "business," and setting out the criminal penalties as they applied to the appellant. Therefore, any omissions from the ordinance as it was admitted into evidence were harmless.

III.
The appellant asserts that City of Mobile Ordinance No. 34-082, as applied to him, violates the Commerce Clause of the United States Constitution. That ordinance, as amended, provides:
"And each and every person, firm, company, association, partnership, agency or corporation, wherever located, engaging in or carrying on or doing any act or thing herein specified, in or from the City of Mobile an annual license thereof as follows:
"Unless otherwise provided by this Ordinance, the annual license shall be calculated by applying to the Licensee's gross revenues (gross receipts and gross sales) for the prior year, the applicable rate from the following schedule of rates: (Provided, that in no case shall the full year calculated on the basis of gross revenues be less than $120.00)...."
Although the ordinance includes a lengthy schedule of rates depending on the occupation and revenues, the appellant was assessed the minimum amount, $120, in 1997 because neither he nor his employer, Garland Company, generated sufficient revenues warranting a higher assessment. However, the appellant argues that this amount could not be assessed against him because he was engaged in interstate commerce on behalf of Garland, an Ohio corporation with headquarters in Cleveland, Ohio. Garland manufactures and sells roofing and waterproofing products around the country, including within the city limits of Mobile.
The United States Supreme Court has held "that a tax violates the Commerce Clause `when it unfairly burdens commerce by exacting more than a just share from the interstate activity.'" Tyler Pipe Indus. v. Washington State Dep't. of Rev., 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987), quoting Washington Dep't. of Revenue v. Association of Washington Stevedoring Cos., 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978). Previously, the Court had held that interstate commerce was completely immune from state taxation. Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951). However, the Court later recognized that those engaged in interstate commerce should be made to pay their fair share of the state tax burden. In Complete Auto Transit v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the Court overturned Spector, replacing it with a four-pronged analysis to determine if a given state tax violates the Commerce Clause. In order to withstand judicial scrutiny, the tax must:
"(1) Be applied to an activity with a substantial nexus with the taxing State;
"(2) Be fairly apportioned;
"(3) Not discriminate against interstate commerce; and

*831 "(4) Be fairly related to the services provided by the State."
Id. at 279, 97 S.Ct. 1076.
Before the Complete Auto test is applied, however, we must first determine whether the activity in question constitutes interstate commerce. The appellant asserts that his activity as an agent for Garland does constitute interstate commerce; citing early United States Supreme Court "drummer" cases.[1]Robbins v. Taxing District of Shelby County, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694 (1887); Memphis Steam Laundry Cleaner v. Stone, 342 U.S. 389, 72 S.Ct. 424, 96 L.Ed. 436 (1952). Robbins worked for a firm located in Ohio that sold paper and stationary and he was a resident of Ohio. He traveled to different states soliciting sales by displaying samples of his company's products. Id. The City of Memphis, Tennessee, fined Robbins for failing to obtain a business license in connection with his "drumming" activities within the city. However, the United States Supreme Court held that such activity was interstate commerce and was not subject to local taxes. Id. at 497-98, 7 S.Ct. 592. Although the Court's holding that interstate commerce was completely immune from such taxation has been modified, the analysis in Robbins regarding what constitutes interstate commerce still applies.
The City of Mobile disputes the appellant's characterization of himself as a "drummer." According to the City, "Townsend is no drummer, and his reliance on the drummer cases is misplaced. His attempt to style himself as an itinerant, a poor traveling salesman with no significant contact to Mobile is belied by the record." Brief of Appellee at p. 14. The City's main contention is that, whereas drummers like Robbins were residents of jurisdictions other than the taxing authority, the appellant is a resident of Mobile and as such, it argues, may be taxed by that authority. The city argues that the residency of the person taxed is the key issue, quoting language from Robbins:
"[T]he only way in which commerce between the states can be legitimately affected by state laws, is when, by virtue of its police power, and its jurisdiction over persons and property within its limits, a state ... [imposes] taxes upon persons residing within the state ... and upon avocations and employments pursued therein ... But, in making such internal regulations, a state cannot impose taxes upon persons passing through the state, or coming into it merely for a temporary purpose."
120 U.S. at 493-94, 7 S.Ct. 592. According to the City of Mobile, because the appellant is a resident of Mobile, he is subject to that jurisdiction's taxation.
Although the above-quoted passage states a basic general rule about subjects within a jurisdiction being subject to that jurisdiction's taxation, it does not address the issue of what types of activities may be subject to taxation. If a tax unfairly burdens interstate commerce, it violates the Commerce Clause, regardless of where the person engaging in such interstate commerce resides. In fact, Robbins was not decided upon the basis of Robbins' residence, but rather upon the location of the goods for which he solicited sales. The Court stated:
"It is very true, that if the goods when sold were in the state, and part of its general mass of property, they would be liable to taxation; but when brought into *832 the state in consequence of the sale, they will be equally liable; so that, in the end, the state will derive just as much revenue from them as if they were there before the sale. As soon as the goods are in the state, and become part of its general mass of property, they will become liable to be taxed in the same manner as other property of similar character, as was distinctly held by this court in the case of Brown v. Houston, 114 U.S. 622, 5 S.Ct. 1091, 29 L.Ed. 257. When goods are sent from one state to another for sale, or in consequence of a sale, they become part of its general property, and amenable to its laws: provided that no discrimination be made against them as goods from another state, and that they be not taxed by reason of being brought from another state, but only taxed in the usual way, as other goods are. Brown v. Houston, qua supra; Howe Mach Co. v. Gage, 100 U.S. 676, 25 L.Ed. 754. But to tax the sale of such goods, or the offer to sell them, before they are brought into the state, is a very different thing, and seems to us clearly a tax on interstate commerce itself."
Robbins, 120 U.S. at 497, 7 S.Ct. 592. (Emphasis added.) According to the Court, the goods solicited for sale by Robbins were not subject to Memphis's business license tax because the goods were located outside of Tennessee when Robbins was soliciting for their sale.
Applying Robbins and the Complete Auto test to the present case requires an analysis of the appellant's role as an agent for Garland and of how Garland conducts its business. Unfortunately, the record does not supply these facts. Included within the record is an affidavit describing these matters in detail, signed by the appellant and attached to a "motion to correct record." However, the record reflects that that motion was denied by the trial judge and that the City of Mobile objected to the introduction of the affidavit into evidence unless the appellant was subjected to cross-examination. Because it does not appear in the record that the appellant was subjected to cross-examination, this Court is hesitant to accept the content of the affidavit as truth.
The record discloses that on the first day of trial the appellant attempted to stipulate facts with the City of Mobile, which attempt was unsuccessful. The following day, the trial judge did not allow the appellant to testify, reasoning that the dispute was purely a legal one that could be decided upon the briefs. Because the Commerce Clause issue requires an analysis of the way in which Garland conducts its business, this case is remanded to the trial court with instructions that the appellant be allowed to testify and be subjected to cross-examination. Due return shall be made to this Court within 49 days of the date of this opinion.
REMANDED WITH INSTRUCTIONS.
LONG, P.J., and COBB, BROWN, and BASCHAB, JJ., concur.

On Return to Remand
McMILLAN, Judge.
The appellant, Thomas R. Townsend III, was found guilty by the City of Mobile Municipal Court of failing to purchase a business license, a violation of City of Mobile Ordinance No. 34-082. He was fined $200 plus court costs and was sentenced to 30 days in jail. That sentence was suspended and he was placed on one year's probation. After appealing his case to circuit court, the appellant was found guilty and was fined $200 plus court costs.
*833 On appeal, Townsend challenged the constitutionality of the city ordinance, arguing that it discriminated against interstate commerce in violation of the Commerce Clause of the United States Constitution. We remanded this case to the trial court with instructions to take testimony from the appellant, Thomas Townsend III, because the record was unclear as to whether his business activities within the City of Mobile constituted interstate or intrastate commerce. This information was necessary to determine whether Townsend's Commerce Clause challenge to his 1997 license tax assessment was valid. On remand, the trial court held a hearing at which Townsend testified and was subject to cross-examination.
Townsend stated at the hearing that he is employed by the Garland Company, an Ohio corporation that manufactures waterproofing, flooring, and roofing materials, as a sales representative. The company does not maintain any inventory, warehouses, or storage facilities in Alabama and does not advertise by radio, television, or billboards in the City of Mobile. In 1996 Townsend's assigned territory included the Florida panhandle, the State of Alabama, and the Gulf Coast of Mississippi. He traveled to these areas from Mobile in his own car, he said, averaging four or five days and two nights a week away from Mobile. Townsend said that he contacted potential customers, showed them the company's product line, and presented proposals. When a customer called him to place an order, he added details such as the shipping address and invoicing address before forwarding the order to Garland's corporate office. He said that he did not have authority to actually accept orders or to issue invoices, grant credit, or receive payment. Townsend used samples of Garland's products in his sales but did not maintain or deliver merchandise, which was instead shipped from Ohio by common carrier.
Townsend further testified that in 1996 he resided in an apartment in Mobile. He admitted that he telephoned customers and scheduled appointments from the apartment and that he also received telephone calls from customers there, although he did not meet with customers in his home. He said that he sometimes took customers out to dinner in the City of Mobile and that he belonged to a Mobile civic organization and to a church in Mobile and to the local chapter of the Construction Specifiers Institute, a professional organization. Townsend maintained telephone and fax lines, as well as computer access to Garland's web site and E-mail, at his apartment. He also maintained customer records at the residence.
From the evidence adduced at the hearing, it is clear that Townsend was engaged in interstate commerce. It is undisputed that in 1997 he did not purchase a business license, as required by Mobile Ordinance No. 34-082. The City introduced evidence that Townsend produced $8,021.89 in sales in 1996.[1] Under the tax rates set out in the ordinance, Townsend should have paid the minimum assessment of $120 for his 1997 license.[2]

I.
Townsend contends that Mobile's Ordinance No. 34-082, as applied to himself and his employer, violates the Commerce Clause of the United States Constitution. *834 He first argues that the imposition of a minimum or "flat tax" for the privilege of conducting business in the City of Mobile "discriminates against interstate commerce." More specifically, he argues that Ordinance No. 34-082 fails to satisfy the third prong of the test set out by the United States Supreme Court in Complete Auto Transit v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977).
In Complete Auto, the United States Supreme Court overruled its earlier decision in Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951), and held that a taxing jurisdiction can require those engaged in interstate commerce to pay their fair share of the jurisdiction's tax burden. Under the Complete Auto test, a tax is permissible if (1) it is applied to an activity with a substantial nexus with the taxing state; (2) it is fairly apportioned; (3) it does not discriminate against interstate commerce; and (4) it is fairly related to the services provided by the State. Id. at 279, 97 S.Ct. 1076.
Townsend's claims concerning the third prong of the Complete Auto test cannot be considered because he did not raise them at the trial-court level. At the hearing on Townsend's motion to supplement the record, his counsel stated, in pertinent part, the following:
"The only leg that we have presented to the Court in terms of it being unconstitutional is the apportionment issue and that's our argument.... We admit all the other issues or prongs of the Complete Auto test."
Townsend also failed to include this claim in his motion to dismiss, motion for judgment of acquittal, and motion for a new trial. This court will not consider an argument raised for the first time on appeal. Eastland v. State, 677 So.2d 1275 (Ala.Cr. App.1996).

II.
The appellant's second contention is that "Mobile's minimum privilege license tax is not `fairly apportioned' among the States [sic]." More specifically, he argues that the "minimum" or "flat tax" nature of the tax imposed by Mobile violates the second prong of the Complete Auto test.
Townsend first argues (A.) that Ordinance No. 34-082 is unconstitutional on its face because it defines gross receipts or gross sales to include receipts or sales outside of Mobile. However, this argument need not be considered on appeal. Townsend admits that the claim is inapplicable in the present case because the City of Mobile informed him that his 1997 license tax would be based only upon Garland's business within Mobile.
Townsend next argues that (B.) the tax imposed by the City of Mobile fails the fair apportionment test because, he says, it is not "internally consistent." He argues that, if every city in which he or Garland did business imposed an identical $120 minimum tax, they would be forced to pay "multiple tax on the same income." The appellant offers the following hypothetical in support of his claim:
"Business A is an interstate seller of widgets that had 1996 gross receipts of $1,000,000, generated in 100 separate taxing jurisdictions with ordinances like Mobile's, or an average or $10,000 in each jurisdiction. Business B is also a seller of widgets with $1,000,000 in gross receipts[;] however, all receipts are generated within Mobile....[I]f all 100 of the taxing jurisdictions have an ordinance similar to Mobile's, Business A will be required to [pay] ... a total tax of $12,000. Business B[,] on the other hand[,] will be taxed on its $1,000,000 of gross receipts at the rate of .002456 [the *835 rate assigned to the appellant and Garland], for a total tax of $2,456. In this internal consistency test, interstate commerce paid a tax that was over four times higher than the tax on intrastate commerce for the same level of gross receipts."
A court determines whether a tax is fairly apportioned by examining whether it is internally and externally consistent. Goldberg v. Sweet, 488 U.S. 252, 261, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989). The "internal consistency" test is satisfied if the tax is structured so that, if every state imposed an identical tax, no multiple taxation would result. Id. at 260-61, 109 S.Ct. 582; Container Corp. of America v. Franchise Tax Board, 463 U.S. 159, 169, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983).
In the present case, under the hypothetical, the appellant would not pay "multiple tax on the same income." He would instead pay multiple taxes on multiple incomes, i.e., on 100 separate local incomes generated in each of the cities in which he did business. Such a tax is internally consistent because, if each of the 100 jurisdictions taxed only those sales generated within its boundaries, only a single jurisdiction would tax each sale.
The appellant also argues that (C.) Ordinance No. 34-082 fails the external consistency test. This test, which is set out in Goldberg v. Sweet, supra, 488 U.S. at 262,, 109 S.Ct. 582, examines whether the State "taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." The appellant argues, citing Trinova Corp. v. Michigan Dep't of Treas., 498 U.S. 358, 380, 111 S.Ct. 818, 112 L.Ed.2d 884 (1991), that if the gross receipts attributed to the taxing jurisdiction are "out of all appropriate proportion to the business transacted ... in that State," the external consistency requirement cannot be satisfied.
Here, the appellant was taxed only on receipts or sales generated within the City of Mobile. That method of computation clearly complies with the requirements of Goldberg and Trinova, supra. Compare Gwin, White & Prince v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272 (1939), in which the State of Washington's attempt to tax all gross receipts, including those from fruit shipped to places of sale in other states and in foreign countries, was held unconstitutional.
Because the City of Mobile's Ordinance No. 34-082, as applied to the appellant, did not violate the Commerce Clause of the United States Constitution, the appellant's conviction and sentence are due to be affirmed.
AFFIRMED.
LONG, P.J., and COBB, BASCHAB, and FRY, JJ., concur.
NOTES
[1] A "drummer" is one who sells goods by sample. Robbins, 120 U.S. at 490, 7 S.Ct. 592.
[1] The license tax for each calendar year is based upon the gross receipts of the previous year.
[2] Townsend would have had to generate more than $48,859.93 in gross receipts to warrant more than the minimum assessment.